

**SO ORDERED.**

**SIGNED this 24th day of January, 2020.**

_Lena Mansori James_
_____
LENA MANSORI JAMES
UNITED STATES BANKRUPTCY JUDGE

---

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| Keith Emanuel Williams, Sr. and | ) | Case No. 12-81690 |
| Addie Lindsay Williams, | ) | |
|      Debtors. | ) | |
| _____ | ) | |
| | ) | |
| Keith Emanuel Williams and | ) | |
| Addie Lindsay Williams | ) | |
| | ) | |
|      Plaintiffs, | ) | Ad. Proc. No. 19-09007 |
| v. | ) | |
| | ) | |
| CitiFinancial Servicing LLC d/b/a OneMain | ) | |
| Financial, Wilmington Savings Fund Society, | ) | |
| FSB, as Trustee of Stanwich Mortgage Loan | ) | |
| Trust A, U.S. Bank Trust National Assoc., | ) | |
| as Trustee of the Bungalow Series III Trust, | ) | |
| Carrington Mortgage Services LLC, and | ) | |
| SN Servicing Corp., | ) | |
| | ) | |
|      Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION AND ORDER**

This adversary proceeding comes before the Court upon (1) the motion to dismiss filed

by CitiFinancial Servicing, LLC (Docket No. 38)[1] and (2) the motion to dismiss filed by

---

[1] Unless otherwise indicated, the record citations refer to Case No. 19-09007, rather than the underlying bankruptcy case, Case No. 12-81690.

Carrington Mortgage Services, LLC and Wilmington Savings Fund Society, FSB, as Trustee of Stanwich Mortgage Loan Trust A (Docket No. 41), pursuant to Federal Rule of Bankruptcy Procedure 7012. After consideration of the record and for the reasons stated herein, the Court will deny the motion filed by CitiFinancial Servicing, LLC and will grant in part and deny in part the motion filed by Carrington Mortgage Services, LLC and Wilmington Savings Fund Society, FSB, as Trustee of Stanwich Mortgage Loan Trust A.

FACTUAL BACKGROUND

On November 12, 2012, Keith and Addie Williams (the "Plaintiffs") filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code. Plaintiffs were owners of record on real property located at 5311 Whippoorwill Street, Durham, North Carolina (the "Property"). Plaintiffs' confirmed plan provided for the Chapter 13 Trustee to make ongoing monthly mortgage payments to OneMain Financial Group, LLC, the entity servicing the mortgage held by CitiFinancial Servicing, LLC (collectively referred to as "CitiFinancial"), along with additional payments on the prepetition arrearage in an amount to be determined at a later date (Case No. 12-81690, Docket No. 16, the "Confirmed Plan"). On March 26, 2013, Plaintiffs' bankruptcy counsel, on behalf of CitiFinancial, filed a proof of claim asserting CitiFinancial's security interest in the Property, stating the amount of the secured claim as $103,375.98 (Claim # 17-1).[2] On May 1, 2013, with no objection from CitiFinancial, the Court entered an order granting the Trustee's motion to allow the secured claim, specifically providing that CitiFinancial's long-term secured debt would be payable in monthly installments of $1,053.00, and setting the amount of the prepetition arrearage at $6,318.00. On December 13, 2017, a Notice of Transfer was filed

---

[2] The Plaintiffs' bankruptcy counsel later amended the OneMain proof of claim on October 30, 2013, but the amount of the secured claim remained unchanged. The only change counsel made to the amended proof of claim was an additional address directing the Trustee where to send the payments (Claim # 17-2).

with the Court, indicating CitiFinancial assigned the deed of trust and the secured claim to Wilmington Savings Fund Society, FSB, as trustee of Stanwich Mortgage Loan Trust A, with notices and payments to be sent to Wilmington's servicer, Carrington Mortgage Services, LLC (collectively referred to as "Carrington"). On April 3, 2018, the Trustee filed a Notice of Final Cure Mortgage Payment, to which Carrington responded on April 24, 2018, concurring with the Trustee's assessment that Plaintiffs had cured the prepetition arrearage and were current on postpetition mortgage payments through April 2018. Plaintiffs received discharges on July 26, 2018 and their bankruptcy case was closed on September 4, 2018.

On Plaintiffs' motion, the Court reopened the bankruptcy case on February 21, 2019 to allow Plaintiffs to file an adversary proceeding against several of their past and present mortgage holders and mortgage servicers. On March 15, 2019, Plaintiffs filed a complaint against CitiFinancial, Carrington, U.S. Bank Trust National Association, as Trustee of the Bungalow Series III Trust ("U.S. Bank"), and SN Servicing Corporation ("SN") containing three claims for relief: (1) violations of the discharge injunction, (2) violations of the automatic stay and, (3) violations of the Fair Debt Collection Practices Act ("FDCPA"). On July 2, 2019, Plaintiffs filed an Amended Complaint against the same defendants (Docket No. 34, the "Amended Complaint"). On July 16, 2019, two separate motions to dismiss the Amended Complaint were filed by CitiFinancial and Carrington (Docket No. 38, 41).

In the Amended Complaint, Plaintiffs allege CitiFinancial, Carrington, and SN misapplied their mortgage payments both during and after the pendency of their chapter 13 case, subsequently sending communications that erroneously overstated the total balance of their account. Specifically, Plaintiffs assert that during the case, CitiFinancial misapplied ongoing monthly payments received from the Trustee to the prepetition arrearage, applied payments to

the wrong month, and misapplied the prepetition arrearage payments to the ongoing installment payments (Docket No. 34, ¶ ¶ 70–71). CitiFinancial, Plaintiffs argue, willfully failed to correctly credit payments received under the Confirmed Plan, in violation of the automatic stay and the discharge injunction (Docket No. 34, ¶¶ 153, 198). *See* 11 U.S.C. §§ 362(a), 524(i). Plaintiffs allege that following CitiFinancial's transfer of the claim, Carrington continued to incorrectly credit payments received for the remainder of the bankruptcy case, misapplied ongoing monthly payments received to the prepetition arrearage, and generally failed to accurately account for payments it received during the time it serviced the mortgage (Docket No. 34, ¶¶ 99–101, 110). Plaintiffs further assert Carrington communicated false credit information regarding the account, continued the "snowballing effect of misinformation" regarding the total debt owed by Plaintiffs, and, despite agreeing Plaintiffs had cured the prepetition arrearage and were current on payments, continued to insist Plaintiffs had missed mortgage payments and owed an amount far exceeding its allowed secured claim (Docket No. 34, ¶¶ 111–12, 159).

STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal of a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In evaluating a motion to dismiss, a court must "test the sufficiency of the complaint to see if it alleges a claim for which relief can be granted." *Dolgaleva v. Va. Beach City Pub. Sch.,* 364 F. App'x 820, 825 (4th Cir. 2010). A motion under Rule 12(b)(6) should be granted if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Accordingly, the factual allegations must "be enough to raise a right to relief above the speculative level" and advance the plaintiff's claim "across the line from conceivable to plausible." *Id.* at 555, 570. As explained in *Ashcroft v. Iqbal,*

4

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

556 U.S. 662, 678 (2009) (internal quotations and citations omitted).

To determine plausibility, all well-pleaded facts set forth in the complaint are taken as true and viewed in a light most favorable to the plaintiff; however, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement" will not constitute well-pleaded facts necessary to withstand a motion to dismiss. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. Assuming the complaint meets the plausibility standard, the plaintiff is not required "to also rebut other possible explanations for the conduct alleged." 2 MOORE'S FEDERAL PRACTICE § 12.34(1)(b) (2019). *See Houck v. Substitute Trustee Servs.*, 791 F.3d 473, 484 (4th Cir. 2015) (holding that "a plaintiff need not demonstrate … that alternative explanations are less likely" to survive a motion to dismiss) (quoting *Twombly*, 550 U.S. at 570)). On the other hand, dismissal is proper under Rule 12(b)(6) "if the complaint lacks an allegation regarding an element necessary to obtain relief." 2 MOORE'S FEDERAL PRACTICE § 12.34(4)(a) (2019); *see also EEOC v. Pbm Graphics*, 877 F. Supp. 2d 334, 343 (M.D.N.C. 2012) (finding a plaintiff must allege facts sufficient to state each element of his claim) (citing *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 764–65 (4th Cir. 2003)).

DISCUSSION

CitiFinancial and Carrington request dismissal under Federal Rule of Civil Procedure 12(b)(6), as made applicable to this proceeding by Bankruptcy Rule 7012, for failure to state a claim upon which relief can be granted. In assessing the motions, the Court will consider the adequacy of Plaintiffs' pleadings for each of the three separate causes of action, to determine whether Plaintiffs have stated a claim upon which relief can be granted.

1.    The First Cause of Action: Violation of the Section 524(i) Discharge Injunction[3]

Plaintiffs argue CitiFinancial and Carrington violated § 524(i) by misapplying the Plaintiffs' mortgage payments, and continuing to show, through statements and letters, Plaintiffs' mortgage balance as much higher than provided for in both the proof of claim and court order setting the amount of the claim (Docket No. 34, ¶¶ 153, 155, 158, 159). Plaintiffs ask the Court to use its authority under § 105(a) to sanction CitiFinancial and Carrington for actual damages, including emotional distress, aggravation, and inconvenience, as well as for reasonable attorney's fees, and punitive damages to deter CitiFinancial and Carrington from continuing to engage in similar conduct going forward (Docket No. 34, ¶¶ 162–63, 189–91).

---

[3] While two of Plaintiffs' causes of action allege violations of the automatic stay and the Fair Debt Collection Practices Act ("FDCPA"), Plaintiffs' other cause of action is labeled as a "Motion for Contempt and Sanctions for Violation of the Discharge Injunction." While some circuits have determined a contempt proceeding under § 105 to enforce the discharge injunction must be pursued as a contested matter, by motion in the underlying bankruptcy case, rather than in an adversary proceeding, *see Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1191 (9th Cir. 2011), the Fourth Circuit has not addressed the question and there are "many decisions within this Circuit which have entered contempt judgments in the context of adversary proceedings." *Dotson v. United Recovery Group (In re Dotson)*, No. 09-72188, 2013 WL 5652732, at *4 n. 4 (Bankr. W.D. Va. Oct. 16, 2013) (declining to apply *Barrientos* rationale to dismiss debtor's claim for violation of the discharge injunction); *see also Harlan v. Rosenberg & Assocs., LLC (In re Harlan)*, 402 B.R. 703 (Bankr. W.D. Va. 2009); *Gates v. Didonato (In re Gates)*, No. 04-12076, 2004 WL 3237345 (Bankr. E.D. Va. Oct. 20, 2004). Moreover, neither CitiFinancial nor Carrington raised the issue in their respective motions to dismiss and both specifically moved to dismiss all causes of action, including the alleged violation of the discharge injunction, under Bankruptcy Rule 7012, which, absent a specific order by the Court, is not expressly applicable to contested matters. Accordingly, the Court will interpret Plaintiffs' Motion to Impose Sanctions for Violation of the Discharge Injunction as an additional cause of action within the Complaint.

The bankruptcy system affords debtors protection from creditors' collection efforts through two related, but sequentially separated provisions. The automatic stay under § 362(a) shields debtors for the duration of a bankruptcy case until entry of discharge or dismissal. *See* § 362(c)(2). Once a discharge is entered, the automatic stay terminates and a discharge injunction takes effect to prevent creditors' efforts to collect on debts that were discharged. A discharge in bankruptcy, "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor …" 11 U.S.C. § 524(a)(2). While a violation of the discharge injunction does not provide an express remedy akin to § 362(k) for violations of the automatic stay, § 105 allows a bankruptcy court to hold a creditor in civil contempt, and impose contempt sanctions, for violating the discharge injunction. *See Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019); *see also Bradley v. Fina (In re Fina)*, 550 F. App'x 150, 154 (4th Cir. 2014).

While long-term debts such as mortgages, which are not paid off through a confirmed chapter 13 plan, are not discharged, the Bankruptcy Code requires mortgage creditors to properly apply any payments received on those debts during the chapter 13 case as part of a confirmed plan. A creditor's failure to do so is treated under § 524(i), which provides:

> The willful failure of a creditor to credit payments received under a plan confirmed under this title, unless the order confirming a plan is revoked, the plan is in default, or the creditor has not received payments required to be made under the plan in the manner required by the plan (including crediting the amounts required under the plan), shall constitute a violation of an injunction under subsection (a)(2) if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor.

11 U.S.C. § 524(i).

As a preliminary matter, CitiFinancial argues that it could not have violated the discharge injunction because it "did not hold or service the debt in question when the Plaintiffs' discharges

7

were granted" (Docket No. 39, p. 3). Designed to remedy instances in which creditors misapplied payments under a confirmed plan, § 524(i) is unique in that the provision is "not limited to acts occurring after discharge." 4 COLLIER ON BANKRUPTCY ¶ 524.08 (16th ed. 2019). While a "discharge is necessary to give rise to the § 524(a)(2) discharge injunction, which in turn is a prerequisite to bringing a proceeding pursuant to § 524(i), … that [§ 524(i)] proceeding may relate to a creditor's conduct that occurred *prior* to the discharge." *Santander Consumer, USA, Inc. v. Houlik (In re Houlik)*, 481 B.R. 661, 672 (10th Cir. B.A.P. 2012) (emphasis added). The Court finds that § 524(i) is applicable to CitiFinancial despite the fact it had transferred its secured claim by the time Plaintiffs had obtained their discharges, because the operable offending conduct for purposes of § 524(i), the alleged misapplication of payments, occurred in part when CitiFinancial still possessed the claim (Docket No. 34, ¶¶ 69–71).

There are two requirements to establish a violation of § 524(i): (1) a willful failure to credit payments received under a confirmed plan and (2) material injury to the debtor. *Ridley v. M&T Bank (In re Ridley)*, 572 B.R. 352, 361 (Bankr. E.D. Okla. 2017). Bankruptcy courts that have examined the issue, as well as the leading treatise, have analogized the willfulness requirement to the standard for a "willful violation" of the automatic stay under § 362(k). *See, e.g.*, *In re Ferris*, No. 3:12-bk-4004-JAF, 2019 WL 6690564, at *4 (Bankr. M.D. Fla. Dec. 6, 2019) (finding "willfulness in the context of § 524(i) requires only that the creditor intended to credit payments improperly"); *In re Ridley*, 572 B.R. at 361–62 ("As in § 362(k), the first requirement [under § 524(i)] of willfulness is simply an intent to commit the act; it does not require a specific intent to violate the Code or plan provisions."); *Scott v. Caliber Home Loans, Inc. (In re Scott)*, Adv. No. 14-01040, 2015 WL 9986691, at *6 (Bankr. N.D. Okla. July 28, 2015) (noting "the test for willfulness is simple and rather undemanding: did the creditor intend

8

to credit the payments received in the manner in which it did?"); 4 COLLIER ON BANKRUPTCY ¶ 524.08 (16th ed. 2019) ("The willfulness requirement of section 524(i) should not be a significant obstacle for debtors. As in section 362(k)(1), willfulness should be interpreted to mean simply that the creditor intended to commit the act, i.e. credit the payment in the manner it did[.]"). Bad faith is not required to show a willful failure to credit payments, *In re Ridley*, 572 B.R. at 362, and, "[a]bsent a creditor's proof that the improper crediting was a mistake in conflict with the creditor's normal procedures, the creditor should be presumed to have intended its acts." 4 COLLIER ON BANKRUPTCY ¶ 524.08 (16th ed. 2019).

Plaintiffs allege that CitiFinancial and Carrington "willfully failed to correctly credit payments received under the Confirmed Plan," instead applying funds intended for ongoing mortgage payments to the prepetition arrearage, and vice versa (Docket No. 34, ¶¶ 69–71, 110, 153, 157). As to CitiFinancial specifically, Plaintiffs assert the letter from Carrington to Plaintiffs, dated August 31, 2017 and attached to the Notice of Transfer, is evidence of misapplication of plan payments (Case No. 12-81690, Docket No. 44). In that letter, Carrington states that, as of August 8, 2017, payments on the account were to be directed to Carrington, rather than CitiFinancial, and "the amount of the debt [Plaintiffs] owe is $130,376.74" (Docket No. 34, ¶¶ 77–79). Plaintiffs allege the August 31, 2017 letter from Carrington, sent just 24 days after Carrington assumed servicing on the account, is evidence that, prior to the transfer, CitiFinancial misapplied payments it received in violation of § 524(i). Plaintiffs allege that Carrington continued the misapplication of payments, misrepresented the total amount Plaintiffs owed on the mortgage, and communicated that false information to other persons and entities (Docket No. 34, ¶¶ 99–101, 114). Plaintiffs allege further that, despite filing a response to the Trustee's Notice of Final Cure Payment that Plaintiffs were current on all postpetition payments,

Carrington sent Plaintiffs a July 18, 2018 mortgage statement incorrectly stating in bold-type that it had not received all mortgage payments due since the bankruptcy filing. This monthly mortgage statement, dated July 18, 2018, stated "The next post-petition payment from the debtor(s) is due on: 5/01/2018" despite the fact that the Chapter 13 Trustee had made mortgage payments through Plaintiffs' plan such that the Plaintiffs were to resume direct payments beginning June 1, 2018, and Plaintiffs had made both the June and July 2018 payments (Docket No. 34, ¶ 105). The mortgage account was transferred on November 20, 2018 to SN, and Plaintiffs allege that the next month, on December 11, 2018, SN sent a letter stating the balance of the mortgage was $131,886.23, and that it was a debt collector attempting to collect on a debt (Docket No. 34, ¶¶ 115–16). SN sent a second letter to Plaintiffs dated December 12, 2018 stating, "Your mortgage payment that was due on 3/1/2017 is now late" (Docket No. 34, ¶ 117). SN sent a third letter that month, dated December 19, 2018, which notifies the Plaintiffs of fees assessed and charged to their account, including "Forebearance Prin Assessment" in the amount of $6,318.00, an amount that matches the amount of the allowed prepetition arrearage in the Plaintiffs' chapter 13 case (Docket No. 34, ¶ 120).

CitiFinancial argues Plaintiffs do not point to a single communication from CitiFinancial suggesting it misapplied plan payments. While it is true the Amended Complaint cites the August 31, 2017 letter from Carrington, which erroneously stated an inflated account balance, for the argument that CitiFinancial misapplied payments, given the proximity between when CitiFinancial transferred the account and when Carrington sent the letter, the Court finds the allegation sufficient to be plausible in this pre-discovery context of a Rule 12(b)(6) motion to dismiss. The Court draws the reasonable inference that Carrington sent Plaintiffs a letter showing an inflated balance based on records it received from CitiFinancial the previous month. Evidence

10

that could prove CitiFinancial's misapplication of plan payments is controlled by CitiFinancial and has not been turned over to Plaintiffs (Docket No. 47, p. 2). *See Pili v. Patel*, No. 3:18-cv-317, 2019 WL 180185, at *7 (E.D. Va. Jan. 11, 2019) (finding plaintiff "permitted to plead facts based on 'information and belief' if such plaintiff is in a position of uncertainty because the necessary evidence is controlled by the defendant"); *Cybernet, LLC v. David*, No. 7:16-CV-16-RJ, 2016 WL 5106986, at *9 (E.D.N.C. Sept. 19, 2016) (finding same). Further, the Court finds the allegations that Carrington misapplied payments, which are supported by the alleged communications Plaintiffs received from Carrington and SN that showed missing payments and an overstated balance, are sufficient for purposes of a motion to dismiss when taken in the light most favorable to Plaintiffs.

Turning to the second element, Plaintiffs must also plausibly plead material injury to state a claim upon which relief can be granted under § 105 and § 524(i). As with willfulness, "the material injury requirement will be met in virtually every case involving a secured creditor, because the failure to properly credit payments will almost always result in a higher payoff balance for the debtor and therefore a larger lien on the debtor's property than if the payments were credited properly." 4 COLLIER ON BANKRUPTCY ¶ 524.08 (16th ed. 2019); *see also Ridley v. M&T Bank (In re Ridley)*, 572 B.R. 352, 361 (Bankr. E.D. Okla. 2017). That is precisely the injury Plaintiffs allege here. Despite Plaintiffs' successful plan completion, leading to their eventual discharges, the account balance of Plaintiffs' mortgage was in excess of the allowed amount of their secured claim by as much as $27,000 (Docket No. 34, ¶ 77). Plaintiffs also allege medical and emotional injury, such as increasing blood pressure, headaches, emotional distress, and anxiety (Docket No. 34, ¶ 186).

Despite these allegations, CitiFinancial and Carrington argue that § 524(i) requires not only the willful misapplication of payments, but also an "act to collect," and that they made no attempt to collect on Plaintiffs' debt during the time they held or serviced the loan. First, Carrington argues that statements cited by Plaintiffs included limiting language and "important disclosures" that such communications were "not a demand seeking payment of the current balance" and "merely … informational notice regarding the status of the loan." (Docket No. 42, p. 8). However, the inclusion of boilerplate disclaimers is not a talisman, cleansing a creditor's ongoing misrepresentation of the total payoff balance owed on a discharged debtor's mortgage loan. *See, e.g.*, *In re Papic*, No. CV 17-4060 DSF, 2017 WL 6947912, at *4 (C.D. Cal. Oct. 10, 2017) (finding creditor "cannot willfully circumvent the discharge order by attaching a boilerplate disclaimer"); *Todt v. Ocwen Loan Servicing, LLC (In re Todt)*, 567 B.R. 667, 679 (Bankr. D.N.H. 2017) (stating that "a pro forma bankruptcy disclaimer is not a 'get out of jail free' card that can absolve a creditor of liability for a pattern of conduct that is inconsistent with the terms of the disclaimer itself"); *In re Youngkin*, No 12-08391, 2014 WL 789117, at *6 (Bankr. E.D.N.C. Feb. 27, 2014) (finding lender's inclusion of boilerplate language that its letter was information notice and not an attempt to collect a debt "does not negate the ultimate intent of the letter").

The second rationale posited by CitiFinancial and Carrington brings the Court to what lies at the heart of the motions to dismiss—the argument that Plaintiffs' sole and proper remedy for the alleged misapplication of payments and an inflated account payoff balance is against the current holder and servicer, U.S. Bank and SN. CitiFinancial and Carrington argue that even if they misapplied payments during the pendency of the chapter 13 case, only the current holder of the claim can be liable under § 524(i). This interpretation of the discharge injunction is overly

12

narrow and would undercut the purpose of both the injunction and § 524(i) specifically. As alleged in the Amended Complaint, CitiFinancial failed to properly credit payments, resulting in a purported mortgage balance greatly exceeding the amount of the court-approved secured claim, when it was transferred to Carrington (Docket No. 34, ¶¶ 69–71, 77, 188). Carrington then failed to properly credit payments, resulting in a purported mortgage balance greatly exceeding the amount of the court-approved secured claim, when it was transferred to SN (Docket No. 34, ¶¶ 77, 99–101, 105, 110–112, 116). As the Fourth Circuit has explained, "[t]he purpose behind the discharge injunction is to eliminate any doubt concerning the effect of the discharge as to total prohibition on debt collection effort, and to ensure that once a debt is discharged, the *debtor will not be pressured in any way to repay it*." *Bradley v. Fina (In re Fina)*, 550 F. App'x 150, 155 (4th Cir. 2014) (internal citation omitted) (emphasis added); *see also In re McLean*, 794 F.3d 1313, 1320 (11th Cir. 2015) (finding § 524(a)(2) "is an expansive provision designed to prevent any action that has the effect of pressuring a debtor to repay a discharged debt, *even if the means of pressuring the debtor are indirect*.") (emphasis added). While CitiFinancial and Carrington argue they did not directly apply that pressure to repay a discharged debt at the time Plaintiffs' filed this Amended Complaint, it is reasonable to infer that their alleged misapplication of payments was the basis and impetus for that pressure.

Courts have found creditors in violation of the discharge injunction for failing to inform a transferee of a debtor's discharge. *See, e.g.*, *In re Dogar-Marinesco*, No. 09-35544, 2016 Bankr. LEXIS 4111, at *26 (Bankr. S.D.N.Y. Dec. 1, 2016) (finding a creditor "may also be found to have violated the discharge injunction if it causes a subsequent servicer to send collection letters by failing to inform the new servicer of the bankruptcy"); *Gunter v. Kevin O'Brien & Assocs. Co. LPA (In re Gunter)* 389 B.R. 67, 73 (Bankr. S.D. Ohio 2008) (collecting cases of courts

finding discharge violations where creditors "knew the debt would be collected and therefore should have advised the third party of the discharge"); *but see Finnie v. First Union Nat'l Bank*, 275 B.R. 743 (E.D. Va. 2002) (creditor that sold discharged loan to collection agency not found to violate discharge injunction when transferee later attempted to collect debt from debtor). At least one bankruptcy court has found a discharge injunction violation under § 524(i) on the part of both transferring and transferee servicers for willful failure to properly credit plan payments where both creditors sent erroneous statements to debtors requesting patently inaccurate amounts. *In re Ferris*, No. 3:12-bk-4004-JAF, 2019 WL 6690564, at **3–8 (Bankr. M.D. Fla. Dec. 6, 2019).

Here, the Court finds Plaintiffs' allegations that CitiFinancial and Carrington both transferred Plaintiffs' mortgage account with an inflated balance due to misapplied payments sufficient to constitute an act to collect for the purposes of withstanding a motion to dismiss under Rule 12(b)(6). Allowing creditors to escape the ramifications of their misapplication of payments by selling or transferring the loans would undercut the purpose of both § 524(a)(2) and § 524(i). "To avoid violation of the discharge injunction, a creditor could simply collect on a discharged debt by selling it to a third party, aware that the third party intended to pursue collection of the debt." *In re Nassoko*, 405 B.R. 515, 522 (Bankr. S.D.N.Y. 2009). That is precisely the risk engendered by the argument made by CitiFinancial and Carrington of liability under § 524(i). If it is demonstrated that either CitiFinancial and Carrington misapplied payments made under the Confirmed Plan, as Plaintiffs have alleged, and then transferred the account with records showing an incorrect payment history and inflated loan balance so as to cause injury to Plaintiffs, those actions could constitute a violation of § 524(i). The allegations as stated in the Amended Complaint are sufficient to state a plausible claim under § 524(i).

2.      The Second Cause of Action: Violation of the Automatic Stay

Plaintiffs also seek sanctions against CitiFinancial and Carrington under § 362(k) for violations of the automatic stay. Under that provision, "an individual injured by any willful violation of a stay … shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k). As such, to establish a claim, Plaintiffs must allege that a violation occurred, that the violation was committed willfully, and that the violation caused actual damages. *Ridley v. M&T Bank (In re Ridley)*, 572 B.R. 352, 361 (Bankr. E.D. Okla. 2017).

Plaintiffs allege the misapplication of payments received under a confirmed plan would constitute a violation of the automatic stay (Docket No. 34, ¶¶ 196–98). While there is a split of authority on the issue, the majority of courts to consider the issue have concluded that misapplication of chapter 13 plan payments is a cause of action for violation of the automatic stay. *See, e.g.*, *Szoke v. Chase Home Fin., Inc. (In re Szoke)*, Adv. No. 12-4048, 2012 Bankr. LEXIS 6299, at **17–18 (Bankr. N.D. Ohio Aug. 28, 2012); *Mattox v. Wells Fargo, NA (In re Mattox)*, No. 10-05041, 2011 WL 3626762 (Bankr. E.D. Ky. Aug. 17, 2011); *Galloway v. EMC Mortg. Corp. (In re Galloway)*, No. 05-13504, 2010 WL 364336, at *5 (Bankr. N.D. Miss. Jan. 29, 2010); *Myles v. Wells Fargo Bank, N.A. (In re Myles)*, 395 B.R. 599, 606 (Bankr. M.D. La. 2008); *but see Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*, 421 B.R. 356, 368–69 (Bankr. S.D. Tex. 2009) (finding misapplication of payments does not violate the automatic stay). In *Rodriguez,* the plaintiff argued the creditor impermissibly applied payments to legal fees and charges rather than to the principal, interest, and escrow payments. 421 B.R. at 367. The court analyzed the eight prohibitions under § 362(a) and found that none applied to the facts alleged. *Id.* Here, unlike in *Rodriguez,* Plaintiffs allege that CitiFinancial and Carrington

15

acted to collect a claim that arose before the commencement of the case in violation of

§ 362(a)(6) (Docket No. 34, ¶¶ 70, 100, 197). The Confirmed Plan, binding upon CitiFinancial

and Carrington pursuant to § 1327, specified the extent to which CitiFinancial and Carrington

could properly exercise control over payments made by the chapter 13 trustee, and acts in

contravention of the Confirmed Plan may rise to a level of a willful violation of the stay. *See In

re Mattox*, 2011 WL 3626762, at *6.

CitiFinancial and Carrington cite to the First Circuit's decision in *Mann v. Chase

Manhattan Mortg. Corp.*, 316 F.3d 1 (1st Cir. 2003), arguing that, even if they erroneously

credited payments, such errors, "absent any overt attempt by [a creditor] to recover," would not

constitute a violation of the automatic stay. (Docket No. 39, p. 8; Docket No 42, p. 10) (citing *id.*

at 3). The alleged infraction in *Mann*, however, is distinguishable from what is alleged to have

transpired here. In *Mann*, the First Circuit was careful to note that erroneous postpetition

bookkeeping entries that "are in no manner communicated to the debtor, the debtor's other

creditors, the bankruptcy court, nor any third party," do not constitute violations. *Mann*, 316 F.3d

at 3. Plaintiffs here, however, point to multiple communications they received *directly* from

Carrington that inaccurately stated the total payoff balance on the mortgage. Moreover, Plaintiffs

allege that Carrington communicated false credit information regarding Plaintiffs' account to SN

(Docket No. 34, ¶ 112). Similarly, as to CitiFinancial, Plaintiffs allege that CitiFinancial

misapplied payments and then transferred the account to Carrington (Docket No. 34, ¶¶ 69, 77).

These characteristics distinguish the allegations in the Amended Complaint from *Mann* and other

cases in which courts did not identify a violation.  *See Saylor v. Select Portfolio Servicing, Inc.

(In re Saylor)*, No 3:07-cv-229, 2008 WL 2397344, at *5 (M.D. Ala. June 9, 2008) (declining to

find the sending of a transaction history report and payoff letter, in response to debtor's request,

violates the automatic stay "when there is no allegation that the mortgage company has attempted to collect the debt."); *Williams v. Chase Manhattan Mortg. Corp.*, No. 1:04-cv-199, 2005 WL 2544585, at *10 (W.D.N.C. Oct. 11, 2005) (finding no violation of the automatic stay where erroneous communication was sent directly to plaintiffs' attorney and only after a request for such information was made by the plaintiffs' attorney). As such, the allegations in the Amended Complaint are sufficient for the Court to make the reasonable inference that alleged misapplied payments by CitiFinancial and Carrington were not simply bookkeeping entries without impact and communicated to no one, but were used to support an inflated loan balance that was transferred from one creditor to another for collection from Plaintiffs.

Plaintiffs also allege CitiFinancial and Carrington committed the violation willfully (Docket No. 34, ¶¶ 69–71, 110, 198). The Fourth Circuit has held that, "to constitute a willful act [under § 362], the creditor need not act with specific intent but must only commit an intentional act with knowledge of the automatic stay." *Citizens Bank v. Strumpf (In re Strumpf)*, 37 F.3d 155, 159 (4th Cir. 1994), *rev'd on other grounds*, 516 U.S. 16 (1995). "[A] good faith mistake is generally not a valid defense." *Bradley v. Fina (In re Fina)*, 550 Fed. App'x. 150, 154 (4th Cir. 2014). Here, Plaintiffs pleaded CitiFinancial and Carrington were aware of the automatic stay and the Confirmed Plan, and that they misapplied the payments received in direct contravention of the Confirmed Plan. (Docket No. 34, ¶¶ 42, 53, 56, 69–71, 110). Accordingly, the Court finds Plaintiffs have plausibly pleaded a willful violation of the automatic stay.

Finally, Plaintiffs assert they suffered damages stemming from the automatic stay violations. Specifically, Plaintiffs allege that, by misapplying the payments received under the Confirmed Plan, thereby greatly increasing the total payoff balance of Plaintiffs' mortgage, CitiFinancial and Carrington acted to collect funds there were not owed. The Court finds the

17

allegations in the Amended Complaint regarding damages sufficient for the purposes of Rule 12(b)(6) and that Plaintiffs' have plausibly pleaded the elements required under § 362(k).

3.    The Third Cause of Action: Violation of the FDCPA

Plaintiffs also assert a third cause of action for alleged violations of the FDCPA against Carrington. "Congress enacted the FDCPA to eliminate abusive debt collection practices and ensure that debt collectors who refrain from such practices are not competitively disadvantaged." *Dubios v. Atlas Acquisitions LLC (In re Dubois)*, 834 F.3d 522, 526 (4th Cir. 2016). The FDCPA prohibits debt collectors, *inter alia*, from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," and from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. §§ 1692e-1692f. Debt collectors who violate the FDCPA are liable for actual damages, statutory damages of up to $1,000, and attorney's fees and costs. 15 U.S.C. § 1692k(a).

Carrington requests the Court dismiss Plaintiffs' FDCPA counts pursuant to Rule 12(b)(6), for failure to state a claim upon which relief can be granted (Docket No. 41). Before addressing whether Plaintiffs plausibly pleaded a cause of action under the FDCPA, however, the Court must first address whether it has jurisdiction to hear this aspect of the Amended Complaint. While not raised by Carrington, subject matter jurisdiction may be raised by the court itself. *United States v. White*, 139 F.3d 998 (4th Cir. 1998). In fact, "questions of subject-matter jurisdiction may be raised at any point during the proceedings and may (or, more precisely, must) be raised sua sponte by the court." *Brickwood Contractors., Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004). Accordingly, this Court must first determine whether the FDCPA allegations are properly before this Court.

Bankruptcy courts may "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1). A bankruptcy court "may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11," but, absent the consent of the parties, may only submit proposed findings of fact and conclusions of law to the district court for de novo review. 28 U.S.C. § 157(c)(1). A proceeding "arises under title 11" if it is "a cause of action created by the Bankruptcy Code, and which lacks existence outside the context of bankruptcy." *In re Kirkland*, 600 F.3d 310, 316 (4th Cir. 2010). A proceeding "arises in title 11" if it is "not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy." *Valley Historic Ltd. P'ship v. Bank of N.Y.*, 486 F.3d 831, 835 (4th Cir. 2007). Violations of the FDCPA give rise to a private right of action that "may be brought in any appropriate United States district court …or in any other court of competent jurisdiction," 15 U.S.C. § 1692k(d), and thus FDCPA claims "exist outside of bankruptcy." *Harlan v. Rosenberg & Assocs., LLC (In re Harlan)*, 402 B.R. 703, 711 (Bankr. W.D. Va. 2009). Plaintiffs' FDCPA claims, therefore, do not "arise under" or "arise in" title 11 and are not core proceedings for purposes of bankruptcy court jurisdiction. *Id*.

To determine whether a claim falls under a bankruptcy court's "related to" jurisdiction, bankruptcy courts in the Fourth Circuit determine whether the outcome of the civil proceeding "could conceivably have any effect on the estate being administered in bankruptcy." *Valley Historic*, 486 F.3d at 836; *see also Gaitor v. U.S. Bank, N.A. (In re Gaitor)*, No 14-09059, 2015 WL 4611183, at *6 (Bankr. M.D.N.C. July 31, 2015). While there must be a "close nexus" between the claim and the bankruptcy case, *Valley Historic*, 486 F.3d at 836–37, related to jurisdiction "is not so broad as to encompass litigation of claims arising under state law or non-

bankruptcy Federal law that will not have an effect on the bankruptcy estate, simply because one

of the litigants filed a petition in bankruptcy." *Gates v. Didonato (In re Gates)*, No 04-1240,

2004 WL 3237345, at *2 (Bankr. E.D. Va. Oct. 20, 2004) (citing *New Horizon of N.Y., LLC v.*

*Jacobs*, 231 F.3d 143 (4th Cir. 2000)).

    While the Bankruptcy Code itself may not preclude Plaintiffs from bringing claims under

the FDCPA based on attempts to collect post-discharged debts, "[t]he clear weight of authority is

that bankruptcy courts do not have jurisdiction over such post-discharge claims because they do

not arise under the Bankruptcy Code or 'in' the case and their determination can have no effect

upon the bankruptcy estate." *Dotson v. United Recovery Grp. (In re Dotson)*, No. 13-07027,

2013 WL 5652732, at *4 (Bankr. W.D. Va. Oct. 16, 2013). Subject-matter jurisdiction for

FDCPA claims is also lacking where "[a]ny recovery on the part of the [debtor-plaintiff] would

be his alone and would not inure to the benefit of the bankruptcy estate." *Steele v. Ocwen Fed.*

*Bank (In re Steele)*, 258 B.R. 319, 322 (Bankr. D.N.H. 2001); *see also Wynne v. Aurora Loan*

*Servs., LLC (In re Wynne)*, 422 B.R. 763, 771–72 (Bankr. M.D. Fla. 2010).

    Considering the body of caselaw and the factual context described in the Amended

Complaint, the Court finds Plaintiffs' FDCPA cause of action against Carrington arose

postpetition and does not constitute property of the estate. As in *Gaitor*, given that Plaintiffs'

claim "arose post-petition and even post-discharge, resolution of the claim[] will have no effect

on the bankruptcy estate." *Gaitor v. U.S. Bank, N.A. (In re Gaitor)*, No 14-09059, 2015 WL

4611183, at *6 (Bankr. M.D.N.C. July 31, 2015). Plaintiffs are seeking to recover damages based

on the claim for their own benefit, and not for the benefit of the estate. The finding of a lack of

subject matter jurisdiction is unaltered by situations akin to that described in Plaintiffs' Amended

Complaint, where "the alleged violation of the FDCPA is inextricably part and parcel of a

creditor's attempt to collect a debt which has been discharged." *In re Dotson*, 2013 WL 5652732, at *4. Consequently, Plaintiffs' FDCPA claim is not related to the bankruptcy case and this Court lacks subject matter jurisdiction over that count of the Amended Complaint. Accordingly, the Court will grant Carrington's motion to dismiss as to the FDCPA claim and dismiss Count II of the Amended Complaint without prejudice for lack of subject matter jurisdiction.

## CONCLUSION

For the reasons stated, Plaintiffs have alleged sufficient facts, viewed in a light most favorable to Plaintiffs, that allow the Court to draw the reasonable inference that CitiFinancial and Carrington's actions constitute violations of the discharge injunction under § 524(i) and the automatic stay under § 362(k). Because the Court finds Plaintiffs' FDCPA claim is not "related to" a case under the Bankruptcy Code, the Court lacks subject matter jurisdiction to hear that cause of action against Carrington. Therefore, the Court dismisses Plaintiffs' FDCPA count against Carrington without prejudice to Plaintiffs refiling in a court of competent jurisdiction.

**END OF DOCUMENT**

PARTIES TO BE SERVED
Bankruptcy Case No. 12-81690
Adversary Proceeding No. 19-9007


Keith E. Williams, Sr.
Addie L. Williams
5311 Whippoorwill St.
Durham, NC 27704


Richard M. Hutson, II
3518 Westgate Dr.
Suite 400
Durham, NC 27707


Craig M. Shapiro
1738 Hillandale Rd. Suite D
Durham, NC 27705


John W. Fletcher, III
Henderson Nystrom Fletcher & Tydings
831 East Morehead Street, Suite 255
Charlotte, NC 28202


Joseph M. Lischwe
Nelson, Mullins, Riley & Scarborough LLP
P.O. Box 30519
Raleigh, NC 27622


Robert A. Cox, Jr.
Bradley Arant Boult Cummings LLP
214 N. Tryon Street Suite 2690
Charlotte, NC 28202


Mignon Arrington Lunsford
Burr & Forman LLP
421 Fayetteville St. Suite 1100
Office 1140
Raleigh, NC 27601


William P. Miller
101 South Edgeworth St.
Greensboro, NC 27401